NRI Draft B printed September 22, 2010 (3:48PM)









Affirmed and Memorandum Opinion filed October 19, 2010.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-10-00187-CV

___________________

 

IN THE INTEREST OF K.R.L., a child

 



 



 

On
Appeal from the 314th District Court

Harris County, Texas



Trial Court Cause No. 2009-00385J

 



 

 

MEMORANDUM  OPINION

            In this accelerated appeal from a judgment terminating his
parental rights to K.R.L., appellant raises three issues challenging the
sufficiency of the evidence supporting (1) the statutory grounds for
termination and (2) the finding that termination is in the child’s best
interest.  He also challenges the implied finding that he should not be named
possessory conservator of the child in his fourth issue.  We affirm.

BACKGROUND

            K.R.L.
was born on August 3, 1997.  When K.R.L. was ten years old, the Department of
Family and Protective Services initiated action based on allegations that the
child’s mother and her companion consumed illegal drugs and left their drugs
and drug paraphernalia around the house where the child lived.  The mother had
been arrested in the child’s presence for possession of marijuana and was on
probation when the Department initiated its action.  

            After
the mother and her companion tested positive for drug use, the Department
brought suit for parental termination and conservatorship of the child on
January 16, 2009.  The Department was granted temporary protective custody of
the child shortly after initiating this action.  Appellant was served with the
Department’s suit while in prison.  The case was tried to the court on January
7, 2010.  After issuance of a bench warrant to secure appellant’s attendance at
trial, appellant was transported from prison and testified at trial.  The
child’s mother and the Department’s representative also testified.  

            The
child’s mother testified that she and appellant had not lived together since
K.R.L. was born.  She testified that appellant had very limited periods of
possession of the child, and K.R.L. had only stayed with appellant for about
three weeks in the summer of 2005.  She stated that, other than those three
weeks, appellant did not offer to take care of the child or pay any expenses
for the child.  According to her, appellant’s only contribution to the support
of the child was that he provided some clothes on possibly two occasions.  She
acknowledged that appellant’s parents had given K.R.L. some “clothes and maybe
a toy or two” as Christmas gifts.  

The Department’s
representative, Dawn Miles, testified that appellant had been incarcerated at
least five times since the child’s birth, for a cumulative total in excess of
five years at the time of trial.  Miles testified without objection that
appellant’s criminal activity constituted endangerment to K.R.L., and that
termination was in the child’s best interest.  She stated that appellant was
currently serving sentences with terms extending more than two years after the
date that the Department assumed the child’s custody.  Miles opined that there
would be a continuing danger to the child if she were “returned” to appellant
on his release from prison.  She testified that appellant had only provided
minimal support to the child since her birth.  

Miles conceded on
cross-examination that there were no allegations that appellant had abused or
mistreated the child.  She was aware that some family services were available
to incarcerated inmates, she had not advised appellant about compliance with a
family plan, and she was unaware whether appellant had attempted to initiate or
follow any such plan.  Miles acknowledged that appellant expressed love for his
child and a desire to be a part of his daughter’s life.  She testified that
appellant had stated “he might get out sometime” in 2010.  

Miles testified that the
child has been placed with a relative, and she is doing well.  K.R.L. resides
with her mother’s ex-husband, who has been a part of her life since she was
eight months old.  Miles testified that the ex-husband “has actually played the
father role” for K.R.L., and he would like to adopt her.  K.R.L. has indicated
that she wants to remain in her current placement, and Miles observed that she
is very happy and stable there.

Appellant also testified
at trial.  He testified that he and his wife kept K.R.L. for the summer in 2005
and 2006.  Before that, his visitation was “off and on” with “two weeks here,
two weeks there, during the summer.”  According to him, there were times when
the mother had “breakdowns,” and she would drop K.R.L. off to stay with him. 
He testified that both K.R.L. and her mother spent three months with appellant
after the break-up of the mother’s marriage.  He stated that he otherwise
visited K.R.L. whenever her mother allowed.  He believes that K.R.L. recognizes
him as her father.  

He acknowledged that he
had been incarcerated for 50 months since the child’s birth.  He did not
believe that the possibility of his release before the end of his four-year
sentence was speculative.  He stated that his “mandatory” release date is “June
10,” without specifying the year, but he had no documentation in support of his
claimed early release.  Appellant did not believe his incarceration had a
negative impact on the child. 

He testified that he
tried to maintain contact with his daughter through letters and phone calls
while incarcerated.  He claimed that letters he sent to his daughter through
the Department were returned to him.  He stated that he had just received his
family service plan in December, about a month before trial, so he did not have
adequate time to work on the plan.  He would like his daughter to visit him in
prison and believed it would not negatively impact her.  He testified that he
was unable to obtain an agreement from relatives to help him in caring for his
daughter.  He claimed to be willing to contribute to his daughter’s support
after his release from prison.

At the conclusion of the
trial, the court found that appellant is the child’s natural father and
terminated his parental rights.  In its termination decree, the trial court
found that the father had “engaged in conduct or knowingly placed the child
with persons who engaged in conduct which endangers the physical or emotional
well-being of the child, pursuant to § 161.001(1)(E) of the Texas Family Code.”
 See Tex. Fam. Code Ann. § 161.001(1)(E) (Vernon 2008).  The court also
found that appellant “knowingly engaged in criminal conduct that has resulted
in the father’s conviction of an offense and confinement or imprisonment and inability
to care for the child for not less than two years from the date of filing the
petition.”  See Tex. Fam. Code Ann. § 161.001(1)(Q) (Vernon 2008).  The
court found that termination of appellant’s parental rights was in the child’s
best interest.  See Tex. Fam. Code Ann. § 161.001(2) (Vernon 2008).  The
court also terminated the mother’s parental rights pursuant to her affidavit of
relinquishment.  See Tex. Fam. Code Ann. § 161.001(1)(K) (Vernon 2008). 
The court then appointed the Department as sole managing conservator of the
child, after finding that it would not be in the best interest of the child to
appoint a parent as conservator.  

            Appellant
filed a timely motion for new trial, affidavit of indigency, and statement of
appellate points.  See Tex. Fam. Code Ann. § 263.405(b) (Vernon 2008).  The
trial court denied the motion for new trial.  The court sustained appellant’s
claim of indigence and found that his appellate points were not frivolous.  Id.
§ 263.405(d).  This appeal followed.

DISCUSSION

A. 
Standards of Review

            To
terminate parental rights, a petitioner must establish by clear and convincing
evidence that (1) the parent has committed one or more of the statutory acts or
omissions, and (2) termination is in the best interest of the child.  Tex. Fam.
Code Ann. § 161.001(1), (2) (Vernon 2008); In re J.L., 163 S.W.3d 79, 85
(Tex. 2005).  Clear and convincing evidence means the measure or degree of
proof that will produce in the mind of the trier of fact a firm belief or
conviction as to the truth of the allegations sought to be established.  Tex. Fam.
Code Ann. § 101.007 (Vernon 2008).  

In reviewing the legal
sufficiency of the evidence, we consider the evidence in a light favorable to
the trial court’s finding to determine whether a reasonable trier of fact could
have formed a firm belief or conviction that the finding was true.  In re J.F.C.,
96 S.W.3d 256, 266 (Tex. 2002).  We must assume that the fact-finder resolved
disputed facts in favor of its finding if a reasonable fact-finder could have done
so.  Id.  Consequently, we should disregard all evidence that a
reasonable fact-finder could have disbelieved or found to have been incredible,
but we are not required to disregard all evidence that does not support the
finding.  Id.  

In a factual-sufficiency
review, we must give due consideration to evidence that the fact-finder could
reasonably have found to be clear and convincing.  In re C.H., 89 S.W.3d
17, 25 (Tex. 2002).  If, in light of the entire record, we conclude that the
disputed evidence that a reasonable fact-finder could not have credited in
favor of the finding is so significant that the fact-finder could not
reasonably have formed a firm belief or conviction, then the evidence is
factually insufficient.  In re J.F.C., 96 S.W.3d at 266.

Appellant has also
challenged the court’s conservatorship finding.  The standard of review for
this matter is much different from that used above in reviewing termination
findings.  The burden of proof on a conservatorship issue is a preponderance of
the evidence.  See Tex. Fam. Code Ann. § 105.005; In re J.A.J.,
243 S.W.3d 611, 616-17 (Tex. 2007).  In a case tried to the court, a
conservatorship determination is subject to review for a clear abuse of
discretion and may be reversed only if the decision is arbitrary and
unreasonable or the trial court clearly failed to correctly apply the law.  Gillespie
v. Gillespie, 644 S.W.2d 449, 451 (Tex. 1982).  

B. 
Application

If, as here, the trial
court terminated the parent-child relationship on multiple grounds under
section 161.001(1), we may affirm on any one ground because, in addition to a
finding that termination is in the child’s best interest, only one predicate
violation under section 161.001(1) is necessary to support a termination
decree.  See In re A.V., 113 S.W.3d 355, 362 (Tex. 2003); In re E.A.K.,
192 S.W.3d 133, 151 (Tex. App.—Houston [14th Dist.] 2006, pet. denied)
(“Because we find that there was legally sufficient evidence to support one of
the predicate findings for termination of [the father’s] parental rights, we
need not address the sufficiency of the evidence relating to other predicate
findings.”).  

            In
his first issue, appellant asserts that the evidence was legally and factually
insufficient to support the termination of his parental rights under Family
Code section 161.001(1)(E).  Subsection E requires proof that appellant “engaged
in conduct or knowingly placed the child with persons who engaged in conduct
which endangers the physical or emotional well-being of the child.”  Tex. Fam. Code
Ann. § 161.001(1)(E) (Vernon 2008).  

The Texas Supreme Court
has held that the word “endanger” in the context of Section 161.001 means to “expose
to loss or injury; to jeopardize.”  Tex. Dep’t of Human Servs. v. Boyd,
727 S.W.2d 531, 533 (Tex. 1987).  While Subsection (E) endangerment must be a
direct result of a parental course of conduct, the conduct described does not
have to be specifically directed at the child; nor does it have to cause an
actual injury to the child.  See In re M.C., 917 S.W.2d 268, 269 (Tex.
1996); see also In re J.O.A., 283 S.W.3d 336, 345-46 (Tex. 2009)
(holding father’s history of domestic violence toward the mother, admitted
marijuana use, and previous incarceration on criminal charges that were later
dismissed constituted legally sufficient evidence of endangerment).  As a
general rule, conduct that subjects a child to a life of uncertainty and
instability endangers the physical and emotional well-being of a child.  In
re R.W., 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied).  

At trial, the trial
court admitted certified copies of criminal court judgments for appellant’s six
convictions since 2002.  In December of 2002, appellant pled guilty to credit-card
abuse and was sentenced to six months in the State Jail Division of the Texas
Department of Criminal Justice.  In October of 2003, appellant pled guilty to
unauthorized use of a vehicle and was sentenced to ten months in jail.  On
March 21, 2007, appellant was convicted after a guilty plea to another charge
of unauthorized use of a vehicle, and he was sentenced to one year in state
jail.  On June 22, 2008, appellant pled guilty to theft and was sentenced to
thirty days in county jail.  Less than six weeks later, on August 4, 2008,
appellant was convicted of burglary of a habitation with intent to commit
theft.  At the same time he was also convicted of being a felon in possession
of a weapon.  He was sentenced to four years in prison for each of these felony
offenses, with the sentences to be served concurrently.  Appellant was in
prison for these offenses at the time of trial.  

Appellant’s objection to
the admission of these criminal judgments on relevance grounds was overruled. 
Appellant attempts to challenge their admissibility in this appeal, but he
raises different grounds, challenging the authenticity of the certified copies
and the adequacy of their identification of appellant as the person named on
the judgments.  It is well-settled that if the objection urged on appeal is not
the same as the objection made at trial, any error is waived.  Scurlock
Permian Corp. v. Brazos County, 869 S.W.2d 478, 484 (Tex. App.—Houston [1st
Dist.] 1993, writ denied) (holding that objection at trial that is not the same
as objection urged on appeal presents nothing for appellate review).  In
addition, no challenge to the admission of the criminal judgments was raised in
appellant’s statement of appellate points.  Issues that are not included in a
statement of appellate points are waived.  Tex. Fam. Code Ann. § 263.405(i)
(Vernon 2008); In re J.H.G., 302 S.W.3d 304, 305 (Tex. 2010). 
Therefore, we may not consider appellant’s challenge to the admissibility of
the copies of the judgments.  See In re C.A.B., 289 S.W.3d 874,
887 n.11 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (holding that complaint
challenging criminal records was waived when not included in statement of
appellate points). 

The Texas Supreme Court
has recognized that imprisonment is certainly a factor to be considered by the
trial court on the issue of endangerment.  Boyd, 727 S.W.2d at 533. 
Imprisonment, standing alone, does not constitute engaging in conduct that
endangers the physical or emotional well-being of a child.  Id.  However,
when all of the evidence, including imprisonment, shows a course of conduct
that has the effect of endangering the physical or emotional well-being of the
child, a finding under Section 161.001(1)(E) is supportable.  Id. at
533-34.  

When a parent repeatedly
commits criminal acts that subject him to the possibility of incarceration, it
“can negatively impact a child’s living environment and emotional well-being.” 
In re S.M.L., 171 S.W.3d 472, 479 (Tex. App.—Houston [14th Dist.]
2005, no pet.).  An incarcerated parent is absent from the child’s daily life
and unable to provide support.  Id.  Therefore, a pattern of intentional
criminal activity that exposes a parent to incarceration is conduct that
endangers the physical and emotional well-being of a child.  In re V.V.,
___ S.W.3d ___, 2010 WL 2991241, at *5 (Tex. App.—Houston [1st Dist.] July 29,
2010, pet. stricken) (en banc) (holding that life of crime, based on number of
crimes, frequency of their commission, and repeated incarcerations over a decade,
is sufficient to support finding of endangerment); see also In re M.R.,
243 S.W.3d 807, 819 (Tex. App.—Fort Worth 2007, no pet.) (holding that father’s
imprisonment, along with drug use, criminal conduct, and allowing child to live
with known drug users, constitutes endangerment); In re J.T.G., 121
S.W.3d 117, 131 (Tex. App.—Fort Worth 2003, no pet.) (holding that father’s
incarceration before and during pregnancy, coupled with drug and alcohol abuse,
is sufficient to support finding of endangerment); In re U.P., 105
S.W.3d 222, 235-36 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (holding
that father’s imprisonment, plus supplying drugs to mother during pregnancy and
personal drug use, constituted sufficient evidence of endangerment). 

The evidence in this
case supporting the trial court’s endangerment finding amounts to more than appellant’s
imprisonment alone.  Appellant engaged in a course of criminal conduct over
much of the child’s life.  The latest two convictions were for second and third-degree
felonies, one involving a weapon, crimes that demonstrate an escalating pattern
of dangerous activity.  Appellant acknowledged that he was incarcerated for
almost half of the child’s life.  His incarceration left him unable to care for
K.R.L.  He left K.R.L. in the care of her mother, whom he knew had suffered
“breakdowns.”  We conclude after reviewing the evidence under the appropriate
standards that the evidence is legally and factually sufficient to support the
trial court’s finding that appellant engaged in conduct endangering the
physical or emotional well-being of the child.  We overrule appellant’s first
issue. 

In his second issue,
appellant challenges the sufficiency of the evidence supporting the trial
court’s finding under Subsection Q of Section 161.001(1) of the Texas Family
Code.  Subsection Q provides a basis for termination on a finding that the
parent has knowingly engaged in criminal conduct that has resulted in the
parent’s conviction for an offense and confinement or imprisonment and
inability to care for the child for not less than two years from the date of
filing the petition.  Tex. Fam. Code. Ann. § 161.001(1)(Q) (Vernon 2008).  

The Department asserts
that appellant failed to include a challenge to Subsection Q in his statement
of appellate points and has therefore waived this complaint.  See Tex.
Fam. Code Ann. § 263.405(i) (Vernon 2008).  Appellant erroneously listed in his
appellate points a challenge to the evidence supporting Section 161.001(1)(L),
conduct causing the death or serious injury to a child.  At the statutorily
required hearing to determine whether appellant’s points were frivolous, the
trial court permitted appellant to amend his points to include a challenge to Section
161.001(1)(Q).[1]  
The Department points out that appellant never amended his statement of
appellate points to include his challenge to Subsection Q after the trial court
granted him leave to amend.  See In re M.N., 262 S.W.3d 799, 803 (Tex.
2008) (holding trial court may extend time for filing a statement of points under
Section 263.405 on showing of good cause).  We agree that appellant should have
filed an amended statement of appellate points.  Based on the trial court’s
ruling at the Section 263.405 hearing, however, we will address appellant’s
issue.

Subsection
Q applies prospectively and focuses on the parent’s future imprisonment and
inability to care for the child.  As the Texas Supreme Court explained, “[b]y
looking at future imprisonment and inability to care for the child, subsection
Q purports to protect children whose parents will be incarcerated for periods
exceeding two years after termination proceedings begin.”  In re A.V.,
113 S.W.3d 355, 360-61 (Tex. 2003).  The court recognized that Subsection Q
applies when a “parent is convicted and
sentenced to serve at least two years and will be unable to provide for his or
her child during that time.”  Id. at 360.  

“In some cases, neither
the length of the sentence nor the projected release date is dispositive of
when the parent will in fact be released from prison.”  In re H.R.M.,
209 S.W.3d 105, 108 (Tex. 2006).  Thus, the mere introduction of parole-related
evidence does not prevent a fact-finder from forming a firm belief or
conviction that the parent will be incarcerated for at least two years because
parole decisions are inherently speculative.  Id. at 109.  

The evidence of
appellant’s incarceration is undisputed.  Appellant was sentenced in August of
2008 to two four-year terms.  This suit was filed in January of 2009, after
appellant had served fewer than six months of his sentence.  He was in prison
at the time of trial.  He testified that there were no other family members who
could help him care for the child while he was incarcerated.  Appellant
anticipated early release, but had no documentation to support his belief. 
Therefore, at the time this proceeding was filed, appellant faced approximately
three-and-a-half years of additional incarceration on his concurrent
sentences.  Because appellant’s testimony was speculative, the trial court was
not prevented from forming a firm belief that appellant would be incarcerated
for at least two years from January 2009.  See H.R.M., 209 S.W.3d
at 109.  

We hold that the
evidence is legally and factually sufficient to support the trial court’s
finding under Subsection Q.  We overrule appellant’s second issue.

In his third issue,
appellant challenges the trial court’s finding that termination of his parental
rights is in the child’s best interest.  The Supreme Court has set out factors
that courts may consider when determining the best interest of the child,
including: (1) the desires of the child; (2) the emotional and physical needs
of the child now and in the future; (3) the emotional and physical danger to
the child now and in the future; (4) the parental abilities of the individual
seeking custody; (5) the programs available to assist these individuals to
promote the best interest of the child; (6) the plans for the child by these
individuals or by the agency seeking custody; (7) the stability of the home or
proposed placement; (8) the acts or omissions of the parent that may indicate
that the existing parent-child relationship is not a proper one; and (9) any
excuse for the acts or omissions of the parent.  Holley v. Adams, 544
S.W.2d 367, 371-72 (Tex. 1976).  The Holley factors are not an exhaustive
list, and a court need not have evidence on every element listed in order to
make a valid finding as to the child’s best interest.  In re C.H., 89
S.W.3d at 27.  Undisputed evidence of just one factor may be sufficient to
support a finding that termination is in the best interest of a child.  Id.;
M.C. v. Tex. Dep’t of Family & Protective Servs., 300 S.W.3d 305,
311 (Tex. App.—El Paso 2009, pet. denied). 

The evidence at trial
was that the child was happy and stable in her placement with her mother’s
ex-husband, who had played the role of her father since she was an infant.  The
caseworker confirmed that K.R.L. expressed a desire to remain with him.  Appellant
acknowledged that he did not want to take his daughter’s wishes into
consideration.  He testified he wanted her to visit him in prison and expressed
no concern about the effect this visitation might have on her.  There was no
evidence that K.R.L. wished to visit him in prison or that she wanted to have a
relationship with him.  

Appellant’s history of
criminal behavior and lack of support for his child establishes that he would
not in all likelihood be a source of stability or a viable resource for his child’s
basic needs.  See In re C.A.J., 122 S.W.3d 888, 894 (Tex.
App.—Fort Worth 2003, no pet.) (“Without stability, income, or a home, [a
parent] is unable to provide for the child’s emotional and physical needs.”). 
Both the mother and the Department’s representative testified that appellant
has not had a significant presence in K.R.L.’s life and any financial or other
support he provided was minimal.  Appellant had very limited periods of
possession with the child and had spent almost half of her life behind bars. 
Therefore, the evidence supported a conclusion that appellant lacked sufficient
parenting abilities to care for K.R.L. 

Appellant expressed his
desire to be a part of his daughter’s life, although he had not sought to
establish paternity.[2]
 He conceded that he did not want K.R.L. removed from her current placement. 
Appellant provided excuses for his failure to maintain contact with K.R.L.
while he was in prison.  He testified that he did not have K.R.L.’s address,
and letters sent to K.R.L. in care of the Department were returned.  This
minimal effort to maintain a relationship with K.R.L. does not outweigh the
other factors.  A reasonable fact-finder could have resolved the scant disputed
evidence in our record in favor of the finding that termination is in the
child’s best interest.

After reviewing the
evidence under the appropriate standards, we conclude that the evidence is
legally and factually sufficient to support the trial court’s finding that
termination of appellant’s parental rights was in the child’s best interest.  See
In re S.M.L., 171 S.W.3d at 479 (holding that clear and convincing evidence
existed that termination of father’s parental rights was in child’s best
interest where, among other factors, father was incarcerated at time of
termination hearing and had pattern of criminal and violent conduct).  We
overrule appellant’s third issue.

Finally, appellant
challenges the trial court’s failure to grant him possessory conservatorship in
his fourth issue.  Appellant has actually raised a conditional issue, seeking
appointment as a possessory conservator in the event that this court reverses
the termination finding.  Because we have determined that there is sufficient
evidence to support termination of appellant’s parental rights, appellant’s
conservatorship issue has been rendered moot.  See Jordan v. Dossey, __ S.W.3d
__, 2010 WL 1948280, at *29 (Tex. App.—Houston [1st Dist.] May 13, 2010, pet.
filed).  An order terminating the parent-child relationship “divests the parent
and the child of all legal rights and duties with respect to each other, except
that the child retains the right to inherit from and through the parent unless
the court otherwise provides.”  Tex. Fam. Code § 161.206(b) (Vernon 2008).

Moreover, appellant did
not request appointment as a possessory conservator or for possession of the
child in any pleadings or at trial.  See Tex. R. Civ. P. 301 (requiring
pleadings to support judgment).  Issues such as possession or access to the
child must be preserved by a proper request at trial.  See In re U.P.,
105 S.W.3d at 232 n.4.  We overrule appellant’s fourth issue.

CONCLUSION

We conclude, after
reviewing the evidence under the appropriate standards, that legally and
factually sufficient evidence supports the challenged findings.  We affirm the
trial court’s judgment.

                                                                                    

                                                                        /s/        Kent
C. Sullivan

                                                                                    Justice

 

 

Panel consists of Chief Justice Hedges and Justices
Yates and Sullivan.

 









[1]  At the Section 263.405
hearing, appellant’s counsel stated: “Judge if that is — in fact I’m getting my
copy out — if those were the grounds, I would ask — I would amend the motion to
reflect (Q) grounds instead of (L) ground.”  The court responded, “Okay.  That
part will be granted. . . .”





[2]  The finding of paternity
was made at the Department’s request.